## Garrard, et al. v. Hibbard.

(Decided March 7, 1913.)

### Appeal from Clay Circuit Court.

1. Execution—Purchaser at Sale Under—Lien—Judgment.—Execution creditors who purchased at a sale under their execution land of the debtor on which there was a prior valid mortgage lien, acquired a lien on the land for the amount bid by them at the execution sale and ten per centum per annum from the date of the sale, subject to the mortgage lien; and in a suit subsequently brought by the holder of the mortgage to enforce his lien, in which the purchasers at the execution sale were made defendants, the circuit court should have rendered judgment for the sale of the land to satisfy, first, the mortgage lien; second, the lien of the purchasers at the execution sale.

2. Execution—Sale Under—Pleading.—Where it was alleged in the petition of the mortgagee that the note, the mortgage was given to secure, was wholly unpaid, and the answer of the purchasers of the mortgaged land at the sale under their execution alleged that the note had been in part paid, failure of the mortgagee's reply to deny such allegation of part payment of the note was not a confession of the allegation, as the averment of part payment made by the answer was but a denial, affirmatively made, of that of the petition that the note was wholly unpaid.

3. Execution—Sale Under—Purchaser.—Although a credit which had been entered on the note held by the mortgagee was, at the request of the mortgagor, later erased and the amount of such credit applied to the payment of other debts owing by the latter to the former, the purchasers of the mortgaged land at its sale under their execution cannot complain of such changed application of the credit, as it was made before their purchase at the

execution sale and before the execution reached the hands of the sheriff.

D. Y. LITTLE, H. C. FAULKNER, RAWLINGS & WRIGHT for appellant.

A. B. HAMPTON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

The appellee, Scott Hibbard, being the owner of two notes on Charles R. White and his wife, Eliza White, one for $433.00, dated February 27th, 1908, due one year after date and bearing eight per cent interest from date until paid, the other of $100.00 dated December 19, 1910, due one year after date, bearing eight per cent interest from date until paid and each secured by a mortgage on the same lands, viz., two tracts lying in Clay County, executed simultaneously therewith, brought this suit in the Clay circuit court to recover personal judgment thereon against the obligors, and to enforce each mortgage lien in satisfaction of the note it was executed to secure. The appellants, W. T. Garrard, E. G. Garrard, J. W. Reid and G. G. Carnahan, as partners under the firm name and style of Garrard & Company, were made defendants, because, as alleged in the petition, they caused to be levied upon the two tracts of lands covered by appellee's mortgages, three several executions issued upon judgments in their favor, and when the lands were sold by the sheriff under these executions they became the purchasers thereof at their bid of $369.48.

It was alleged in the petition that the sale of the lands under the executions was void because of the existence of appellee's mortgages which were then and when the executions were issued and levied, of record in the office of the clerk of the Clay County court.

Appellants filed an answer and counter claim containing two paragraphs. In the first it was denied that the two notes or any part of either remained unpaid, and also denied that appellee by virtue of the mortgages mentioned acquired or had any liens upon the lands, or any part thereof, described in the petition. While the pleading did not attack the validity of the mortgages, its denial that the notes were unpaid, in effect, alleged their satisfaction and the discharge of the liens.

The second paragraph set out the several executions issued in appellants favor against C. R. White, the levy

of the same upon the lands embraced in the mortgage, the sale thereof and its purchase by appellants; and also alleged that the amount realized by the sale did not fully satisfy the execution debts or amount to two-thirds of the appraised value of the lands, and that for this reason, other executions for what remained unpaid of appellants' judgment debts, were issued and levied upon White's equity of redemption in the lands and same, when sold by the sheriff, was also purchased by appellants. The answer and counterclaim failed to give the dates of the issuance of the executions or of the levies, but alleged May 1, 1911, as the date of the sale of the lands thereunder. The date of the sale of the equity of redemption was not stated.

By an amended answer and counterclaim, filed after the taking of all the evidence, appellants admitted that the $100.00 note secured by the second mortgage was wholly unpaid, but alleged that the note for $433.00, secured by the first mortgage had been reduced by payments made by White to appellee to $25.00 or $30.00, which amount, with its accrued interest, was all that was due thereon. C. R. White and wife made no defense to the action.

Following the submission of the case the circuit court gave appellee a personal judgment against White and wife for the amount of the two notes and interest and directed a sale of the mortgaged lands, or enough thereof to pay same and appellee's costs, but declared the levies upon the lands and their sale under appellants' execution void; and from that judgment the latter have appealed.

Appellants failed to prove, as alleged in their answer, that all of the $433.00 note secured by the first mortgage executed by White and wife, save $25.00 or $30.00, had been paid. The appellant, E. G. Garrard, testified that C. R. White told him this was so, and White in some sort reluctantly admitted that he might have so informed Garrard, but that the information was not true. This admission of White was incompetent as to appellee, as it was not made in his presence or with his knowledge. It was, however, admissible to contradict and thereby discredit White as a witness.

Both appellee and White admitted that some time in May of the year 1908, the former, by direction of the latter, and out of the proceeds of a $500.00 land note, which he discounted for him in bank, entered with a pen-

cil a credit of $398.00 upon the back of the $433.00 note
which was, however, as they testified, in December, 1910,
by request of White, rubbed off the note by appellee
and the $398.00 applied in liquidation of several smaller
and unsecured notes which White was owing him.

If it had been made to appear from the evidence that
the erasure of this credit from the $433.00 note and the
application of the $398.00 to the payment of the other
debts White was owing appellee, occurred after the levy
of appellants' executions or while they were in the hands
of the sheriff, the law would have required the circuit
court to declare the act illegal as to appellants and com-
pel the application of the $398.00 as a credit on the
$433.00 note; but the evidence is silent on that subject.
It is alleged in the original answer and undenied by the
reply that the sale of the lands under appellants' execu-
tions occurred May 1, 1911, which was five months after
the erasure of the credit from the note and the applica-
tion of the amount thereof to the satisfaction of other
debts owing appellee by White. It does not therefore
appear from the pleadings or proof when appellants'
executions were issued, when they went in the sheriff's
hands or were levied, or even when the judgments. au-
thorizing their issuance were rendered. In view of such
want of proof the right of appellee and White to erase
the credit from the $433.00 note and apply it on other
indebtedness of the latter, cannot be questioned by ap-
pellants, who must be regarded as subsequent creditors.

It is, however, insisted for appellants that as appel-
lee's reply failed to specifically deny the allegations of
its amended answer and counterclaim as to the payment
of all the $433.00 note, except $25.00 or $30.00, the court
should have only given appellee judgment on the note
in question for such balance and its accrued interest.

This contention cannot prevail, for the allegation of
the petition that the $433.00 note was wholly unpaid ren-
dered a denial of any subsequent allegation in appellants'
pleadings that it had been in whole or in part paid un-
necessary. Logan Co. Nat. Bank v. Barclay, 104 Ky., 97;
Ermert v. Dietz, 19 R. 1639.

The circuit court was in error, however, in refusing
appellants all relief. The levy of their executions on
the lands embraced in appellee's mortgages was not in-
valid, nor was the sale of the lands by the sheriff under
the executions void. On the contrary, appellants by their
purchase of the lands under the executions acquired a

lien thereon for the amount of their bids subject to the mortgage liens in favor of appellee.

Section 1709, subsection 1, Kentucky Statutes, applying to sales of encumbered property under execution provides:

"The purchaser at the sale shall acquire a lien on such property for the purchase money and interest at the rate of ten percentum per annum from the day of sale until paid, subject to the prior encumbrance."

Subsection 2 provides:

"The defendant in the execution may redeem the property so sold by paying the original encumbrance with legal interest thereon, and by paying the purchaser his purchase money with ten percentum per annum interest thereon."

In Wilson, &c., v. Flanders, &c., 114 Ky., 534, quoting from Atkins v. Ellison, 10 Bush, 13, we said:

"It has been repeatedly held by this court that since the adoption of the revised statutes, the purchaser at the sale of real or personal estate, upon which there was a bona fide encumbrance by mortgage, etc., acquired only a lien on the property for the purchase money paid by him and ten per cent interest subject to the prior encumbrance. * * * The defendants in the execution having failed to redeem the land, the only remedy left the appellant (purchaser) for the collection of his money was in resorting to a court of equity to enforce his lien, and in doing so it was incumbent on him to make all the parties interested defendants to the action. * * * The Legislature never intended by the act in question to deprive the owner of his title, but, on the contrary, not only permitted him to redeem it, but gave to the purchaser only a lien subordinate to the bona fide encumbrances preceding it, and in the disposition of the property, or its proceeds, under the judgment of a court of equity enforcing these liens, the remnant of the mortgaged estate belongs to the mortgagor. * * * This lien for purchase money, made so by the statute, is in effect a junior mortgage, with the exception that when the purchaser acquires this lien by sale under execution it extinguishes the original debt, and the liability on the part of the original execution debtor no longer exists. The debt for execution having been satisfied the purchaser must look to the property on which this lien exists by reason of the execution sale for his indemnity, and no where else, as he agrees in making the purchase

to pay the debt for the lien subject to the prior encumbrance.''

So in this case the circuit court in enforcing the mortgage liens for the satisfaction of appellee's two notes should at the same time have determined the rights of appellants as purchasers of the lands at the execution sale. To this end, however, appellants should have been required, by an amended answer, made a cross petition against C. R. White and wife, to assert the lien acquired by them under their purchase of the lands at the execution sale and ask its enforcement by a sale of the land, subject to the liens created by the mortgages executed by the Whites to secure the payment of appellee's two notes.

Upon the return of the case to the circuit court it will require appellants to file such amended answer and cross petition, and, when White and wife shall have been brought before the court thereon, judgment shall be entered directing a sale of the lands in question, or enough thereof, to pay, first, the mortgage debts due the appellee and his costs, and second, to pay appellants the amounts bid by them for the lands at the execution sale, with interest at the rate of ten percentum per annum from the date of their purchase, and costs.

For the reasons indicated, the judgment is reversed and cause remanded for proceedings consistent with the opinion.